UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KAYLA HERNANDEZ, on behalf of herself and others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>STATE ROAD AUTO SALES, INC.,<br><br>      Defendant. | Civil Action No. 1:19-cv-11525-NMG<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW** |

## Introduction

Kayla Hernandez ("Plaintiff") brought this action against State Road Auto Sales, Inc. ("Defendant") concerning the sufficiency of Defendant's payment disclosures in her motor vehicle lease agreement. But rather than engage in continued, costly litigation, the parties have reached a class-wide agreement to settle claims under the Consumer Leasing Act, 15 U.S.C. § 1667 ("CLA"), and its implementing regulations, 12 C.F.R. pt. 1013 *et seq.* ("Regulation M"), on behalf of some 940 persons who signed materially similar lease agreements with Defendant.

Though Defendant denies any liability under the statute, to avoid the risks and expense of further legal action, it will create a non-reversionary class settlement fund totaling $18,000, separately pay an award of $2,000 to Plaintiff for her service to the class, separately pay an award of attorneys' fees, costs, and expenses to Plaintiff's counsel as the prevailing party (in an amount to be determined by the Court at the conclusion of the case), and separately pay all costs of class notice and administration of the class settlement, to be conducted by an agreed administrator with extensive experience handling class action settlements like the one presented here.

1

The results obtained here are outstanding, particularly given the limitation on class damages imposed by the CLA, as well as the relatively early juncture by which the parties arrived at an agreement. Plaintiff accordingly seeks entry of the attached order certifying the settlement class, appointing her and her counsel fiduciaries for the class, preliminarily approving the proposed class settlement, and directing class notice in the form and manner prescribed by the parties' agreement. Plaintiff and her counsel strongly believe that this settlement is fair, reasonable, and adequate, and in the best interests of all class members.

Significantly, Defendant does not oppose this relief.

## Summary of the Settlement

Attached to the accompanying Declaration of Jesse S. Johnson is a copy of the class settlement agreement, which defines a Rule 23(b)(3) settlement class as follows:

> All persons (a) with an address in the United States (b) who signed a Closed End Motor Vehicle Lease with State Road Auto Sales, Inc. (c) between August 1, 2017 and March 31, 2019 (d) for a vehicle for personal, family, or household use.

Defendant represents that there are approximately 940 potential class members, including Plaintiff.

Class members who submit valid, timely claim forms affirming that they used their vehicles for personal, family, or household use will receive a pro-rata portion of the $18,000 non-reversionary class settlement fund, likely amounting to between $95 and $190 per person based on historical claims rates in consumer protection class actions. And to the extent any settlement checks go uncashed after the class administrator takes all reasonable steps to forward checks to any forwarding addresses, the residual funds will be directed to Greater Boston Legal Services as a *cy pres* recipient. None of the funds, however, will revert to Defendant.

Separately, and subject to this Court's approval, Defendant also will pay Plaintiff $2,000 in the form of a service award, all costs of class notice and settlement administration, as well as

an award of attorneys' fees, costs, and expenses to Plaintiff's counsel in an amount to be determined by the Court. The parties will continue to negotiate the proposed amount of such a fee and expense award, which will be the subject of a separate motion filed at the conclusion of this case. Importantly, Defendant also has committed to changing its form motor vehicle lease agreement to address Plaintiff's concerns.

Finally, the parties' agreement also provides for a robust direct mail notice program to inform potential class members of the excellent results obtained here, and to provide them with a detachable claim form to confirm their class membership and participate in the settlement fund. Defendant will provide these individuals' names and recent addresses from its own business records, which reflect the necessary contact information for each of the 940 potential class members. The class administrator will then take all reasonable steps necessary to ensure that each such person receives direct mail notice, including updating addresses by reference to U.S. Postal Service databases and sending the notices with forwarding addresses requested. Additionally, a long-form class notice and other case materials will be posted to Plaintiff's counsel's website so that class members may learn more about this action and the proposed settlement terms.

## Argument

**I.   This Court should certify the settlement class.**

Pursuant to Rules 23(a) and 23(b)(3), Plaintiff must establish the following for preliminary certification of her proposed settlement class: (1) the class is so numerous that joinder of all members is impracticable; (2) class members share questions of law or fact in common with Plaintiff; (3) Plaintiff's claims are typical of class members' claims; (4) Plaintiff will fairly and adequately protect the interests of the class; (5) questions of law or fact common to the members of the class predominate over any questions affecting only individual members;

and (6) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. And because certification is sought here in the context of a settlement, the requirements of Rule 23(a) and 23(b)(3) are readily satisfied. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").[1]

### A. Settlement class members are so numerous that joinder of all of them is impracticable.

First, as to Rule 23(a)(1), while "[p]recise enumeration of the members of the class is not necessary," *Gordon v. Corporate Receivables, Inc.*, No. 09-230, 2010 WL 376386, at *1 (D.R.I. Jan. 27, 2010), here, Defendant has confirmed that the proposed class likely totals more than 900 consumers in and around Massachusetts who signed materially similar motor vehicle lease agreements. In this Circuit, there is a "low threshold for numerosity," *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009), and the proposed class here of 900 or more lessees easily meets that threshold. *See Ouadani v. Dynamex Operations East, LLC*, 405 F. Supp. 3d 149, 160-61 (D. Mass. 2019) (Saris, C.J.) (proposed class of 99 "comfortably above the 40-class member threshold"); *Lannan v. Levy & White*, 186 F. Supp. 3d 77, 85 (D. Mass. 2016) (Talwani, J.) (certifying class of more than 100); *Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14, 18 (D. Mass. 2010) (Young, J.) (certifying class of "several hundred potential members").

---

[1] All internal citations and quotations are omitted, and emphasis is added, unless otherwise noted.

4

Because the settlement class contains up to 940 members—who are readily identifiable from Defendant's business records—joinder is impracticable, and Rule 23(a) numerosity is satisfied.

### B. Questions of law and fact are common to the members of the settlement class.

Second, the commonality requirement of Rule 23(a) demands only that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This "is relatively easy to meet," as the rule "does not require that all issues be common for the class." *Overka*, 265 F.R.D. at 18. "What matters to class certification is the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Lannan*, 186 F. Supp. 3d at 86.

Here, the questions of fact and law at issue are entirely common because the salient questions—*e.g.*, whether Defendant is a lessor within the scope of the CLA, and whether Defendant's form motor vehicle lease agreement violated the CLA's disclosure requirements—are the same for each class member. So, because each class member has the same CLA claims against Defendant, Rule 23(a)(2) commonality is readily satisfied. *See, e.g.*, *Tarnoff v. Am. Honda Fin. Corp.*, No. 96-6923, 1999 WL 98331, at *2 (N.D. Ill. Feb. 19, 1999) ("The commonality and typicality prerequisites are also met. All class members apparently signed the same lease forms containing the same warranty disclosure. The key issue is whether the disclosure complied with the CLA."); *Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F. Supp. 1399, 1419 (N.D. Ill. 1996) ("The Court is satisfied that the core issue presented by the class is whether various of the CLA's disclosure requirements are violated by the Bank One Lease. This issue predominates over all others."); *accord McLaughlin v. Wells Fargo Bank N.A.*, No. 15-2904, 2016 WL 8290115, at *1 (N.D. Cal. Nov. 18, 2016) (granting preliminary approval

5

to class settlement involving claims that the defendant failed to make required payoff disclosures).

### C. Plaintiff's claims are typical of class members' claims.

Third, "[t]ypicality requires that the class representative's injuries arise from the same events or course of conduct as do the injuries of the class, but his claims need not be identical to those of absent class members." *Ouadani*, 405 F. Supp. 3d at 163. "This requirement is not highly demanding because the claims only need to share the same essential characteristics, and need not be identical." *Id.* Indeed, "Rule 23(a)(3) tolerates even significant differences between the named plaintiff and the proposed class members as long as the named plaintiff's experience is reasonably coextensive with the experiences of the rest of the class." *Id.*

No matter, typicality is satisfied here because Defendant offered materially identical lease agreements to hundreds of consumers within the class period, all of whom have CLA claims identical to Plaintiff's and which are based solely on the text of the similar agreements that everyone signed. *Tarnoff*, 1999 WL 98331, at *2 (typicality requirements are met where "[a]ll class members apparently signed the same lease forms containing the same warranty disclosure"); *Demitropoulos*, 915 F. Supp. at 1419 (same).

### D. Plaintiff and her counsel will fairly and adequately protect the interests of all class members.

Fourth, to adequately represent a class for purposes of Rule 23(a)(4), the "moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Lannan*, 186 F. Supp. 3d at 89. As to the former, Plaintiff has amply demonstrated the lack of any conflict, as she pursued this case from the outset with the goal of obtaining relief not only for herself but also for

all other lease signatories. Through this settlement, she has accomplished exactly that. Moreover, Plaintiff has been actively involved in this litigation since its inception, remained in regular contact with her attorneys throughout the process, and was firmly committed to protecting the interests of absent class members—which included her rejecting an individual settlement offer that would have provided no relief to absent class members. Instead, she has obtained a maximum damages recovery for the class without the risk of additional litigation.

Regarding her counsel, Plaintiff has retained the services of a firm who is well-versed in class action litigation, as the attorneys at Greenwald Davidson Radbil PLLC ("GDR") are well-equipped to handle the instant litigation and have ample experience representing plaintiffs in class actions like this one. *See, e.g.*, *Taylor v. TimePayment Corp.*, No. 18-378, ECF No. 60 (E.D. Va. Oct. 29, 2019) (appointing GDR as class counsel in class action under the CLA, Truth in Lending Act ("TILA"), and state usury law); *Spencer v. #1 A LifeSafer of Ariz., LLC*, No. 18-2225, 2019 WL 1034451, at *1 (D. Ariz. Mar. 4, 2019) (same for CLA class action); *Knapper v. Cox Commc'ns, Inc.*, No. 17-913, 2019 WL 467163, at *4 (D. Ariz. Feb. 6, 2019) (same for action under the Telephone Consumer Protection Act); *Marcoux v. Susan J. Szwed, P.A.*, No. 15-93, 2016 WL 5720713, at *3 (D. Me. Oct. 3, 2016) (same for class action under the Fair Debt Collection Practices Act ("FDCPA")); *see also* Johnson Decl. at ¶¶ 7-12 (collecting cases appointing GDR class counsel in consumer protection class actions).

Thus, Rule 23(a)(4) adequacy is satisfied here. *Accord Datta v. Asset Recovery Sols., LLC*, No. 15-188, 2016 WL 1070666, at *5 (N.D. Cal. Mar. 18, 2016) ("In addition, Plaintiff's counsel has submitted several declarations which describe counsel's experience in prosecuting consumer protection and FDCPA/RFDCPA class actions. Accordingly, the Court finds that Plaintiff has satisfied the vigorous prosecution requirement.").

### E. The questions of law and fact common to the settlement class predominate over any questions potentially affecting only individual class members.

Turning to Rule 23(b)(3), the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. While this inquiry "requires the court to formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case," it "is often readily met in cases alleging consumer or securities fraud." *Lannan*, 186 F. Supp. 3d at 90.

The central legal issue before this Court is whether Defendant's lease agreements violated the CLA and Regulation M by failing to provide necessary disclosures in the form and substance required by law. Plaintiff's and the class's claims all stem from materially identical motor vehicle lease agreements, and numerous courts have found that common questions of law and fact predominate where class members' claims are based on standardized documents such as lease agreements or debt collection letters. *See, e.g.*, *Cox v. Porsche Fin. Servs., Inc.*, No. 16-23409, 2018 WL 5905381, at *9 (S.D. Fla. Nov. 9, 2018) ("The questions at issue – particularly (1) whether Porsche violated the CLA for its role in approving and effecting leases that fail to disclose net trade-in allowance . . . are common ones that predominate over individual questions. Accordingly, the undersigned finds that both classes have met the predominance requirement."); *Kindler v. Mitsubishi Motors Credit of Am., Inc.*, No. 09-315, 2011 WL 13177287, at *2 (W.D. Mo. Apr. 20, 2011) (granting approval of class settlement involving vehicle leases and noting that "common questions of law and fact predominate over any questions affecting only individual Settlement Class Members, and include whether or not the Defendants' actions constituted a violation of the Consumer Leasing Act"); *see also Schuchardt v. Law Office of Rory W. Clark*, No. 15-1329, 2016 WL 232435, at *6 (N.D. Cal. Jan. 20, 2016) (finding

8

predominance satisfied because "the Court has already determined that the legality of the debt collection letters is a question of law that is common to the class. If the Court were to find that the text violated the FDCPA, that single adjudication would reach the claims of all Class Members.").

Rule 23(b)(3) predominance is thus satisfied here.

### F. A class action is the superior method for the fair and efficient adjudication of Plaintiff's and class members' claims.

Lastly, Rule 23(b)(3) also requires that a court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." This is the case if certification "will achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Lannan*, 186 F. Supp. 3d at 90. "Further, class actions are superior if each plaintiff's cause of action is the type that allows those plaintiffs to pool claims which would be uneconomical to litigate individually." *Id.*

In determining whether the "superiority" requirement is satisfied, a court may consider the following: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Here, as noted above, the class action vehicle is the superior method for resolving all class members' claims. No single member of the proposed class has an interest in controlling the prosecution of this action because the claims of all class members are identical, as the allegations involve standardized conduct with regard to form motor vehicle lease agreements. Noteworthy,

9

the alternatives to a class action are either hundreds of lawsuits in and around Massachusetts, or, worse, no recourse at all for nearly a thousand potential absent class members.

Also noteworthy, "[c]lass members would have less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery should they be required to individually litigate their claims." *Magallon v. Robert Half Int'l, Inc.*, 311 F.R.D. 625, 641 (D. Or. 2015). And most class members likely would be unaware of their rights in the first place, and as a result, unlikely to pursue claims. *See Schwarm v. Craighead*, 233 F.R.D. 655, 664 (E.D. Cal. 2006) ("Not only are most individual consumers unaware of their rights under the FDCPA, but also the size of the individual claims is usually so small there is little incentive to sue individually.").

As a result, absent a class action, given the relatively low value to individual potential litigants, many claims identical to those asserted by Plaintiff will likely go unaddressed. *See Demitropoulos*, 915 F. Supp. at 1419-20 ("[S]ince we are dealing with statutory damages under the CLA, the amount of recovery available to any individual is relatively small. Class members, even if aware of their rights, likely would lack the initiative to bring suit individually."). Consequently, Rule 23(b)(3) superiority is met, rendering the claims here eminently suitable to class treatment.

## II. This Court should preliminarily approve the settlement as fair, reasonable, and adequate under Rule 23(e).

Next, Rule 23(e) requires that this Court make a preliminary determination of fairness as follows:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and

10

> preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004); *see also* 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11.25 (4th ed. 2002).

Then, once the preliminary fairness evaluation has been made, the class has been certified for settlement purposes, and notice has been issued to class members, this Court will hold a final fairness hearing to determine whether the proposed settlement is truly fair, reasonable, and adequate. *See* MANUAL FOR COMPLEX LITIGATION § 21.633-34.

To that end, district courts within the First Circuit assess the fairness and adequacy of a class settlement proposal by way of the following criteria: (1) the risk, complexity, expense, and duration of the case; (2) comparison of the proposed settlement with the likely result of continued litigation; (3) the reaction of the class to the settlement; (4) the stage of the litigation and the amount of discovery completed; and (5) the quality of counsel and conduct during litigation and settlement negotiations. *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, No. 09-2067, 2014 WL 4446464, at *5 (D. Mass. Sept. 8, 2014) (Gorton, J.).

And in applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored. *See Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009) ("although policy encourages settlements, the burden remains on the proponents to show that the settlement is reasonable," and "there is a presumption in favor of the settlement if discovery has been adequate and the parties have bargained at arms length"). Here, while a complete fairness evaluation is unnecessary at this juncture, each relevant factor supports the conclusion that the parties' settlement is fundamentally fair, adequate, and reasonable.

### A. The strengths of Plaintiff's case in comparison to the risk, expense, and delay of continued litigation against Defendant favor preliminary approval.

The first factor supports preliminary approval because the settlement at hand guarantees class-wide relief without incurring the risk, additional expense, or inevitable delay associated with continued litigation. Every class action involves some level of uncertainty, both on the merits and on the appropriateness of certification. This case was no different, as there was no guarantee that Plaintiff's proposed class would be certified over Defendant's objection, or that this Court, or the trier of fact, would find in Plaintiff's favor as to liability.

And even removing such uncertainty, it bears mention that the CLA's damages provision is not mandatory. Instead, it provides for awards in the Court's discretion up to certain amounts—specifically, the "lesser of $1,000,000 or 1 per centum of the net worth of the creditor." 15 U.S.C. § 1640(a)(2)(B). Several factors are considered in the determination of such an award. *See id.* at § 1640(a)(4). Thus, even assuming Plaintiff obtained certification and proceeded to trial and prevailed, there was no guarantee this Court would award the class full statutory damages of 1% of Defendant's net worth. *See Clausen v. Beneficial Fin. Co. of Berkeley*, 423 F. Supp. 985, 990 (N.D. Cal. 1976) ("In determining the proper class award, the Court is directed to consider among other relevant factors, the amount of actual damages suffered, the frequency and persistency of the failures to comply with the law. The resources of the creditors, the number of persons adversely affected, and the extent to which a failure to comply was intentional."). That is, while the class's statutory damages are capped at 1% of Defendant's net worth, there are no minimum, guaranteed damages.

No matter, the parties' agreement here ensures class benefits reaching that 1% threshold. Based upon Defendant's latest financials at the time of negotiations, the class's statutory damages recovery of $18,000 matches the cap imposed by the CLA. This, coupled with the

12

avoidance of uncertainties attendant to continued litigation, weighs heavily in favor of the settlement's immediate relief. *See, e.g.*, *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) (noting in an FDCPA action also involving improper form disclosures, and for which a statutory damages cap applied, like here, "[t]he FDCPA provides for an award up to certain amounts depending on a number of factors, including the nature of the debt collector's noncompliance. Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable.").

> **B.    Comparing the benefits obtained to the likely results of litigation further supports the proposed settlement.**

For this same reason, the second factor likewise favors approval. To reiterate, the cash relief provided to class members here matches the 1% statutory damages cap set by law. *See* 15 U.S.C. § 1640(a)(2)(B). That is, by creating a class settlement fund of $18,000, Defendant is committing an amount to the class commensurate with 1% of its balance sheet net worth, indicating a full statutory damages recovery even at this relatively early stage of these proceedings. *Accord Sanders v. Jackson*, 209 F.3d 998, 1004 (7th Cir. 2000) (holding that "net worth" in an FDCPA action—which similarly limits statutory damages based on the defendant's net worth—means "balance sheet or book value net worth" of assets minus liabilities); *see also Schuchardt*, 314 F.R.D. at 684 ("In sum, Defendant's net worth limits the scope of recovery here, and the Settlement Fund provides for recovery that exceeds this scope. Thus, even if the amount of per-Class Member recovery is less than the amount typically obtained in this District, because it exceeds the statutory maximum recovery, the amount offered in the Settlement Agreement favors final approval.").

Spurning settlement in favor of a potential trial verdict thus would provide class members no appreciable benefit—only added risk and delay of payment (assuming trial victory in the first place).[2] In any event, courts have approved class settlements representing comparatively lower recoveries for class members, further supporting approval of the parties' negotiated resolution here. *See, e.g.*, *McLaughlin v. Wells Fargo Bank, N.A.*, No. 15-2904, 2017 WL 994969, at *2 (N.D. Cal. Mar. 15, 2017) (approving TILA class settlement for 88% of statutory damages cap); *Altamirano v. Shaw Indus., Inc.*, No. 13-939, 2016 WL 1271046, at *4 (N.D. Cal. Mar. 31, 2016) (finally approving class settlement for approximately 14% of total damages at issue, and noting, "Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the settlement is within the range of reasonableness in light of the risks and costs of litigation.").

Moreover, Plaintiff obtained a commitment from Defendant to make adjustments to its form motor vehicle lease agreement to address the concerns raised in this litigation. Such a benefit will accrue to consumers who choose to lease a vehicle from Defendant in the future.

In sum, given the proposed settlement fund here in comparison to CLA statutory damages limits, the settlement presented is fair, reasonable, and adequate, and should be approved by this Court.

---

[2] The risk of a minimal damages award is not merely hypothetical, as illustrated by restricted class damage awards under the FDCPA, which caps class statutory damages like the CLA. *See, e.g.*, *Dickens v. GC Servs. Ltd. P'ship*, 220 F. Supp. 3d 1312, 1324 (M.D. Fla. 2016) ("Having considered these factors and the parties' briefs, the Court finds that the statutory award in this case should be nominal, whether that award applies to Dickens alone or a class of plaintiffs."), *vacated and remanded,* 706 F. App'x 529 (11th Cir. 2017); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, No. 06-1397, 2011 WL 1434679, at *11 (N.D. Ohio 2011) (analyzing the factors set forth in 15 U.S.C. § 1692k and awarding no "additional damages" to members of the class).

### C. The informal discovery shared by the parties confirms the reasonableness of the settlement.

After several months of litigation—which included the exchange of initial disclosures as well as informal class and net worth discovery—the settlement here was achieved with a clear view as to the strengths and weaknesses of Plaintiff's class claims. Indeed, the sufficiency of the disclosures challenged by Plaintiff is a purely legal question; resolution of Plaintiff's class claims thus is relatively straightforward. *Accord Gregory v. McCabe, Weisberg & Conway, P.C.*, No. 13-6962, 2014 WL 2615534, at *9 (D.N.J. June 12, 2014) ("because this action is premised primarily upon a form collection notification letter . . . legal issues predominate the remaining disputes in this litigation").

The more complicated questions remaining here concern viability of class certification and establishing a class damages award within the confines of the statute. To that end, Defendant shared relevant data concerning the potential class size as well as its own net worth. Plaintiff thus could assess the class's maximum potential statutory damages recovery at trial, and she is proud to have negotiated a settlement fund that reaches this amount.

### D. The settlement was the result of arm's-length negotiations among counsel experienced in consumer protection class litigation.

Next, the fifth factor additionally supports preliminary approval. Based on the discovery described above, counsel—who have substantial experience in litigating class actions, particularly under consumer protection statutes—and this Court are adequately informed to evaluate the fairness of the settlement. Both Plaintiff and class counsel firmly believe that the settlement is fair, reasonable, and adequate, and in the best interests of the class members. *See Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are

15

better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.").

Further, the parties' arm's-length settlement negotiations through experienced counsel demonstrate the fairness of the settlement that was reached, and that the settlement is not a product of collusion. Indeed, counsel for Defendant and Plaintiff each zealously negotiated on behalf of their clients over the course of several months, resulting in the exchange of multiple written counteroffers and myriad telephone conferences among counsel before reaching the agreement here presented. As a result, Plaintiff and her counsel submit that the value of the class's recovery here—which reaches the applicable damages cap—reflects their confidence in Plaintiff's claims. *See Schuchardt*, 314 F.R.D. at 685 ("Given Class Counsel's extensive experience in this field, and their assertion that the settlement is fair, adequate, and reasonable, this factor supports final approval of the Settlement Agreement.").

### E.   The settlement treats all class members equitably.

Lastly, Rule 23(e)(2)(D) requires this Court to confirm that the settlement treats all class members equitably. The related Advisory Committee's Note advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018).

Here, each class member has the same CLA claims resulting from Defendant offering them materially similar vehicle lease agreements with allegedly deficient disclosures. As a result, the settlement provides all class members pro-rata portions of a single settlement fund, with class notice distribution, settlement administration, and Plaintiff's counsel's attorneys fees, costs, and expenses to be paid separately by Defendant.

Moreover, class members' releases are identical, as each person will agree to release the same CLA claims based on their form vehicle lease agreements. This consideration accordingly supports preliminary approval. *See Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-660, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) ("This proposal is fair and equitable because the class members' interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund.").

## III. This Court should approve the proposed notice plan.

Pursuant to Rule 23(e), upon preliminary approval, this Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Such notice must be the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Here, the parties have agreed to a notice program to be administered by a well-respected third-party claims administrator—First Class, Inc.[3]—which will use all reasonable efforts to provide direct mail notice to each class member. The plan complies with Rule 23 and due process because, among other things, it informs class members, directly, of: (1) the nature of this action; (2) the essential terms of the parties' settlement, including the class definitions and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or

---

[3] First Class, Inc. is an experienced settlement administrator that has previously been approved to administer similar class action settlements throughout the country. *See, e.g.*, *Hoffman v. Law Office of Fradkin & Weber, P.A*, No. 19-163, 2019 WL 2723581, at *2 (D. Md. July 1, 2019); *Veness v. Heywood, Cari & Anderson, S.C.*, No. 17-338, 2017 WL 6759382, at *5 (W.D. Wis. Dec. 29, 2017); *Green v. Dressman Benzinger Lavelle, PSC*, No. 14-142, 2014 WL 4816698, at *2 (W.D. Ohio Sept. 18, 2014).

17

requesting exclusion, and that class members may make an appearance through counsel; (5) information regarding Plaintiff's requested incentive award and her request for an award of attorneys' fees, costs, and expenses for her counsel; and (6) how to submit a claim and make inquiries, and where to find additional information. Fed. R. Civ. P. 23(c)(2)(B); MANUAL FOR COMPLEX LITIGATION § 21.312.

Importantly, the direct mail notice to class members also will include a pre-addressed detachable claim form to be completed and returned to First Class. The parties have made it as convenient as possible for class members to indicate their desire to participate in the settlement funds and aver that their leases were for vehicles used primarily for personal or household (*i.e.*, non-commercial) purposes. Likewise, GDR will post a detailed class notice and other important case materials to its website for class members' review, where the materials will remain for the entirety of the notice and administration period.

In short, the parties' direct mail notice plan ensures that class members' due process rights are amply protected and should be approved. *See* Fed. R. Civ. P. 23(c)(2)(A); *see also Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 479 (D. Md. 2014) ("Under the circumstances of this case, when all class members are known in advance, the Court finds that the method of direct mail notice to each class member's last known address—and a second notice if the first was returned as undeliverable—was the best practicable notice.").

**IV.     Scheduling a final fairness hearing is appropriate.**

Finally, the last step in the approval process is a final fairness hearing at which this Court may hear all evidence and argument necessary to make its final fairness evaluation. Fed. R. Civ. P. 23(e)(2). This Court will determine after that hearing whether the settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e). The parties

18

respectfully request that this Court set a date for a final fairness hearing, at the Court's convenience, approximately 90 to 120 days after its preliminary approval of the settlement.

## Conclusion

Plaintiff respectfully requests that this Court enter the accompanying order certifying the settlement class, appointing Plaintiff class representative, appointing GDR class counsel, granting preliminary approval to the parties' class action settlement, directing notice in the form proposed, and setting a final fairness hearing at a date and time convenient to this Court. As noted, Defendant does not oppose this relief.

DATED:  March 26, 2020                           Respectfully submitted,


*/s/ Jesse S. Johnson*
James L. Davidson (*pro hac vice*)
Jesse S. Johnson (*pro hac vice*)
Greenwald Davidson Radbil PLLC
7601 N. Federal Hwy., Suite A-230
Boca Raton, FL 33487
Tel: (561) 826-5477
jdavidson@gdrlawfirm.com
jjohnson@gdrlawfirm.com

Kevin V. K. Crick
Rights Protection Law Group, PLLC
100 Cambridge St., Suite 1400
Boston, MA 02114
Tel: (844) 574-4487
Fax: (888) 622-3715
k.crick@rightsprotect.com

*Counsel for Plaintiff and the proposed class*

**Certificate of Service**

I hereby certify that on March 26, 2020, I filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will provide notice to all counsel of record.

*/s/ Jesse S. Johnson*
Jesse S. Johnson