## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KAYLA HERNANDEZ, on behalf of herself and others similarly situated, | Civil Action No. 1:19-cv-11525-NMG |
| Plaintiff, | **PLAINTIFF'S MOTION FOR APPROVAL OF AN INCENTIVE AWARD AND AN AWARD OF ATTORNEYS' FEES, COSTS, AND LITIGATION EXPENSES** |
| v. | |
| STATE ROAD AUTO SALES, INC., | |
| Defendant. | |

**Introduction**

Frustrated with the automobile lease she signed with State Road Auto Sales, Inc. ("Defendant"), Kayla Hernandez ("Plaintiff") brought this class action under the Consumer Leasing Act ("CLA") on behalf of everyone who signed similar leases. She alleged those leases—over 800 in all—provided insufficient payment disclosures under the statute and its implementing regulations. Defendant continues to deny liability, or that its leases are improper, but nevertheless committed to substantial monetary and prospective relief to buy peace with settlement class members.

For the class, Defendant will create a non-reversionary settlement fund of $18,000, likely allowing between $103 and $206 per participating claimant. For Plaintiff, in addition to her share of the settlement fund, Defendant will separately pay her $2,000 for her service to the class, subject to this Court's approval. And also subject to approval, Defendant will separately pay an award of attorneys' fees, costs, and litigation expenses to class counsel—though the specific amount remains in dispute. By way of the parties' agreement, Defendant agreed not to oppose up to $37,000 in fees, but Plaintiff here seeks $57,000 in fees, plus at least $664.23 more in costs and expenses,[1] for her counsel's significant efforts to achieve the results obtained.

And those results are noteworthy. While avoiding the risks and delays of dispositive motion practice and trial, Plaintiff secured a settlement fund equaling the maximum potential statutory damages award available to class members, as dictated by the CLA's damages cap. And beyond the dollars and cents, Defendant also agreed to change its leasing practices moving forward—a public benefit for years to come. The parties notified class members of the settlement

---

[1]    Plaintiff's counsel anticipate incurring additional case-related expenses leading up to the final fairness hearing in December, so Plaintiff will supplement her request accordingly in advance of that hearing.

and of their rights via direct mailings with detachable claim forms, using the names and addresses in Defendant's leasing records, which the administrator—First Class, Inc.—updated as necessary. The notices also included disclosures that Plaintiff would seek up to $60,000 in total in attorneys' fees and expenses for her counsel's work on this matter, and that Plaintiff would seek a $2,000 incentive award.

To date, no class member has objected to the settlement—which includes the proposed attorney's fees and incentive awards—or sought exclusion from the settlement. Nor have any objections resulted from notice provided to governmental entities under the Class Action Fairness Act ("CAFA"). The deadline for class member submissions is October 13, 2020,[2] but the responses thus far have been wholly positive, further supporting the incentive and fee awards herein requested.

As detailed below and in the accompanying Declaration of Jesse S. Johnson ("Johnson Decl."), both of Plaintiff's requests are reasonable and well supported by the record and applicable law. Defendant consents to Plaintiff's $2,000 incentive award and to the payment of a reasonable fee and expense award to Plaintiff's counsel—though it has reserved its right to contest any amount of fees above $37,000. Given the outstanding results achieved here, both proposed awards should be approved in their entirety.

## Settlement Summary

In preliminarily approving the parties' settlement, this Court certified a Rule 23(b)(3) settlement class composed of all persons with an address in the United States who signed a Closed End Motor Vehicle Lease with State Road Auto Sales, Inc., between August 1, 2017 and

---

[2]     Plaintiff will provide the Court a full accounting of all claims, exclusions, and objections in connection with her motion for final approval of the class settlement, due to be filed on November 12, 2020. *See* ECF No. 34.

March 31, 2019, for a vehicle for personal, family, or household use. ECF No. 34 at 2-3. There are 868 potential class members, including Plaintiff.[3]

First, class members who submit valid, timely claim forms will receive a pro-rata portion of the $18,000 non-reversionary class settlement fund, anticipated to be between $103 and $206 per person. For any settlement checks uncashed after First Class takes all reasonable steps to forward checks to any forwarding addresses, the residual funds will be directed to Greater Boston Legal Services as the Court-approved *cy pres* recipient. Thus, nothing will revert to Defendant.

Second, in addition to her share of the settlement fund, Defendant will separately pay Plaintiff $2,000 in the form of a service award, in recognition of her efforts in prosecuting and settling the class's claims. That award is subject to this Court's approval, as outlined below.

Third, Defendant will separately pay Plaintiff's attorneys' fees, costs, and expenses, as determined by this Court. After negotiating the class settlement terms, the parties then reached an agreement on a reasonable range for attorneys' fees in this action; Defendant will not oppose any fee request up to $37,000, while Plaintiff will not seek more than $57,000 in fees. Defendant reserves its right to challenge any fees that Plaintiff requests beyond $37,000.

Fourth, Defendant has separately paid all costs of class notice and will continue to pay all settlement administration costs separately from the class fund and any monies awarded to Plaintiff or her counsel.

Fifth, Defendant confirmed in writing that it no longer uses the form lease agreement signed by class members and has made changes moving forward that address Plaintiff's

---

[3]     The parties initially believed there to be nearly 940 potential class members, but after de-duplication efforts in connection with class notice mailing, they determined that there are only 868 individuals potentially within the class definition.

concerns. This change in Defendant's leasing practices will likely benefit not only Plaintiff and hundreds of class members, but also anyone else who does business with Defendant in the future.

**Argument**

**I.   Plaintiff's $2,000 incentive award—unopposed by Defendant, and to be paid separately from the class settlement fund—is reasonable and should be approved.**

"Incentive awards serve to promote class action settlements by encouraging named plaintiffs to participate actively in the litigation in exchange for reimbursement for their pursuits on behalf of the class overall." *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 352 (D. Mass. Jan. 16, 2015) (Woodlock, J.).[4] This Court, and others in this circuit, routinely grant such awards "to reimburse [] plaintiffs for their effort in pursuing the[ir] claims on behalf of the entire class." *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, No. 09-2067, 2014 WL 4446464, at *9 (D. Mass. Sept. 8, 2014) (Gorton, J.); *see also Bussie v. Allamerica Fin. Corp.*, No. 97-40204, 1999 WL 342042, at *3 (D. Mass. May 19, 1999) (Gorton, J.) ("incentive awards have received approval from courts as a means of compensating named plaintiffs for acting on behalf of a class and furthering the goals of class actions") (collecting cases).

"In granting incentive awards to named plaintiffs in class actions, courts consider not only the efforts of the plaintiffs in pursuing the claims, but also the important public policy of fostering enforcement of laws and rewarding representative plaintiffs for being instrumental in obtaining recoveries for persons other than themselves." *Bussie*, 1999 WL 342042, at *3. To that end, this Court has recognized plaintiffs' efforts in "help[ing] effectuate the policies underlying" the laws being enforced; their having "fully discharged their obligations as class

---

[4]   Internal footnotes, quotations, and citations are omitted, and emphasis is added, unless noted otherwise.

representatives"; and their having "provided needed assistance to counsel in the course of the litigation." *Id.* at *4.

Here, Plaintiff respectfully submits that she faithfully adhered to all three principles and thus is deserving of the relatively modest $2,000 incentive award sought. For more than a year, she dedicated significant time toward the successful prosecution of this litigation, including reviewing pleadings and participating in myriad telephone calls with her counsel to drive litigation and settlement strategy. *See Marcoux v. Susan J. Szwed, P.A.*, No. 15-93, 2017 WL 679150, at *5 (D. Me. Feb. 21, 2017) ("[T]he named Plaintiffs in this case assisted with drafting the Complaint and stayed in touch with Plaintiffs' counsel throughout the litigation. I conclude that the awards are reasonable given the named Plaintiffs' time and energy commitment.").

Plaintiff's efforts ultimately resulted in a class recovery that provides cash relief at the upper limit imposed by the CLA, as well as prospective relief in the form of Defendant's changed leasing practices. Without those efforts, there would have been no lawsuit, or any class recovery at all. Her goal from the outset was to pursue this matter on a class-wide basis to seek redress for all consumers harmed by Defendant's leasing practices, and to compel Defendant to change those practices. By way of this settlement, Plaintiff succeeded on both fronts.

Worth noting, prior to reaching a class deal, Plaintiff repeatedly resisted any settlement efforts that would have excluded the more than 800 absent potential class members. She remained unwavering in her commitment to protecting those class members' interests. Recognizing this resolve, Defendant does not oppose the $2,000 incentive award requested here—which will be paid separately from the class settlement fund and was negotiated only after the class settlement terms had been set. *Accord Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir.

2015) (approving incentive awards that were not conditioned on the class representatives' support for the agreement).

Moreover, after direct mail notice to class members that clearly disclosed the proposed incentive award, the parties have not received any objections to that award. This lends further support to its reasonableness. *See In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 2014 WL 4446464, at *9 ("The incentive awards were also disclosed in the Notice and no class member has objected to the request. Under the circumstances, the awards are reasonable and will be allowed."); *Bussie*, 1999 WL 342042, at *4 (recognizing that "no objections to the request for incentive awards have been filed").

And for additional perspective, the amount requested here is well in line with—or even much smaller than—other class representative awards approved by this Court and others within this circuit. *See, e.g., Carlson v. Target Enter., Inc.*, 447 F. Supp. 3d 1, 5 (D. Mass. Mar. 23, 2020) (Hillman, J.) ($7,500 award); *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-10219, 2017 WL 6460244, at *3 (D. Mass. June 8, 2017) (Dein, M.J.) ($15,000 awards); *Marcoux*, 2017 WL 679150, at *5 ($1,000 awards); *In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., Fair Debt Collection Practices Act (FDCPA) Litig.*, No. 13-2426, 2016 WL 543137, at *10 (D. Me. Feb. 10, 2016) ($6,000 and $4,000 awards); *Bezdek*, 79 F. Supp. 3d at 352 (awards of $2,500 and $1,500); *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 2014 WL 4446464, at *9 ($10,000 awards); *In re Lupron Mktg. & Sales Practices Litig.*, No. 01-10861, 2005 WL 2006833, at *7 (D. Mass. Aug. 17, 2005) (Stearns, J.) (awards of $25,000, $5,000, and $2,500); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189 (D. Me. 2003) (payments of $2,500); *Bussie*, 1999 WL 342042, at *4 ($5,000 awards).

As the proposed award compares favorably with others previously approved, will not dilute class members' recoveries, and is unopposed by Defendant or class members, Plaintiff respectfully submits that $2,000 is fair and reasonable and should be approved.

**II.    Plaintiff's request for $57,000 in attorneys' fees, which is less than her counsel's total anticipated lodestar, is reasonable and should be approved.**

    **A.    The CLA mandates awards of attorneys' fees to prevailing consumer-plaintiffs.**

Moving to Plaintiff's fee request, the CLA is codified within the Truth in Lending Act ("TILA"), and "[t]he language in section 1640(a) unequivocally entitles a successful Truth–in–Lending plaintiff to an award of attorney's fees, and leaves only *the amount* of the award to the court's discretion." *de Jesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 233 (1st Cir. 1990) (emphasis in original); *accord Palmer v. Statewide Grp.*, 134 F.3d 378, 378 (9th Cir. 1998) ("TILA provides that a prevailing plaintiff shall be awarded a reasonable attorney's fee as determined by the court. The statute is both remedial and penal. An award of fees, where the plaintiff succeeds, is generally mandatory.").[5]

By including a mandatory fee-shifting provision in TILA (and the CLA),[6] Congress has indicated that society has a significant stake both in assisting consumers who may not otherwise have the means to pursue these types of cases, and in rewarding those attorneys who assist in that pursuit. The Fourth Circuit recognized:

---

[5]    Defendant agrees that Plaintiff is a prevailing party under the CLA for purposes of a fee award. *See* ECF No. 27-1 at 18 ("For the limited purposes of this settlement, Plaintiff is considered the prevailing party."); *see also Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 8-11 (1st Cir. 2011) (finding that court-approved settlement is sufficient to confer "prevailing party" status for purposes of statutory fee-shifting).

[6]    As the CLA shares TILA's liability and fee-shifting provisions, *see* 15 U.S.C. § 1667d(a), case law addressing TILA fee awards is equally applicable here.

> A fee-shifting provision like § 1640(a)(3) subsidizes the lawsuits of meritorious plaintiffs. Such subsidies appear frequently in civil rights and consumer protection laws, presumably because Congress is (or was) particularly interested in seeing those laws prosecuted. The members of Congress who approved [] TILA may have assumed either that the victims of TILA violations could not afford to bring TILA claims or that they would choose not to after considering the low returns those claims yield relative to the high costs of litigation. Even if lawyers take TILA cases on contingency, as [the plaintiff's] lawyers did, such assumptions remain reasonable under the law as it is now written. TILA awards will rarely be enough to cover the costs of representation; in most cases, they scarcely will cover the costs of filing a claim. Only with fee shifting does the prosecution of a typical individual TILA claim become an economically sensible possibility.

*Nigh v. Koons Buick Pontiac GMC, Inc.*, 478 F.3d 183, 188 (4th Cir. 2007); *accord Hannon v. Sec. Nat'l Bank*, 537 F.2d 327, 328 (9th Cir. 1976) ("The purpose behind granting attorney's fees is to make a litigant whole and to facilitate private enforcement of the Truth in Lending Act.").

Importantly, awards of reasonable attorneys' fees under federal fee-shifting statutes, like the CLA, "are not conditioned upon and need not be proportionate to an award of money damages." *City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986). As the First Circuit declared in *Lewis v. Kendrick* with regard to fee shifting in federal civil rights cases, "We believe we made it clear that we were not departing from the recognized principle that the fee is not limited by the size of the recovery, but may, in appropriate instances, greatly exceed it." 944 F.2d 949, 957 (1st Cir. 1991); *see also Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 296 (1st Cir. 2001) ("While degree of success is critical in determining the amount of a fee award, proportionality is no longer an issue once the prevailing party has separated the wheat from the chaff (i.e., isolated the time spent on her successful claim or claims).").

This is because a rule so limiting an award of attorneys' fees to an amount proportionate to the damages recovered would seriously undermine the mechanism that Congress chose to enforce the CLA, particularly in light of its consumer protection goals. The First Circuit has reiterated that this "makes eminently good sense: a strict proportionality requirement would

overlook entirely the value of other important litigation goals. That kind of rigidity would frustrate the core purpose that underlies many fee-shifting statutes, which are designed to afford private parties the opportunity to vindicate rights that serve some broad public good." *Spooner v. EEN, Inc.*, 644 F.3d 62, 69 (1st Cir. 2011).

The very purpose of the CLA's fee-shifting provision is to benefit a consumer-plaintiff by allowing her to obtain competent counsel to pursue redress under the statute, even for relatively small claims. For example, an individual filing suit under the CLA may recover statutory damages of no more than $2,000, or as little as $200, depending on the terms of her lease. *See* 15 U.S.C. § 1640(a)(2)(A)(ii). While the statute additionally allows recovery of attorneys' fees and costs, *see id.* at § 1640(a)(3), few, if any, attorneys would take on such work if they knew from the outset that they would be paid in proportion to a damages recovery necessarily limited to $2,000 at most, and potentially much less, regardless of their efforts.[7]

By incentivizing the private bar to involve itself in consumer protection litigation by way of fee-shifting provisions, the federal government has relieved itself of the costs of protecting consumers while ensuring that they may still be vindicated under the law. This applies to numerous consumer protection statutes like the CLA, TILA, and the FDCPA. To that end, the Seventh Circuit found that, "[i]n order to encourage able counsel to undertake FDCPA cases, as Congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases." *Tolentino v. Friedman*, 46 F.3d 645, 653 (7th

---

[7]     This is equally true in consumer class actions subject to statutory damages limits like the CLA, where actual damages are often difficult to establish and a class's maximum statutory damages are capped at one percent of the defendant's net worth. *See, e.g.*, *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 689 (N.D. Cal. 2016) (awarding $52,500 in fees and costs in connection with $13,610 class settlement fund under the Fair Debt Collection Practices Act ("FDCPA"), which imposes a similar class damages limitation as the CLA).

Cir. 1995). This "commensurate" fee is best measured *not* by damages obtained but by "what

that attorney could earn from paying clients" at a "standard hourly rate." *Id*. Paying counsel

less—for example, by fashioning an award of attorneys' fees in proportion to the amount of

damages recovered—"is inconsistent with the Congressional desire to enforce the FDCPA

through private actions, and therefore misapplies the law." *Id*.

> The District of Maine succinctly summarized the perils of proportionality as follows:

> In the debt collection context, to apply a rigid proportionality rule to a case where there is no actual demonstrable damage would allow a debt collector to ignore the requirements of federal and state law, confident that its violation would be sanctioned by a maximum award of $1,000 and by attorney's fees roughly limited to the amount of the award. If the proportionality argument were rigorously applied, the potential benefit of the violation of the consumer protections of the FDCPA and [its Maine state law equivalent] could exceed the potential sanction. *Furthermore, if plaintiff's counsel knew, based on a cap on the statutory award, that a substantial portion of her work would go uncompensated, she would have little incentive to do the legal spadework essential for successful litigation and debtors would as a practical matter find it difficult to recruit attorneys to represent them in small, but significant violations of the law.*

*Archambault v. GC Servs. Ltd. P'ship*, No. 16-104, 2016 WL 6208395, at *5 (D. Me. Oct. 24,

2016). Of course, this same reasoning holds for the CLA as well.

> **B.    Having secured a significant class recovery, Plaintiff is entitled to a reasonable attorneys' fee for her counsel's time investment in this case.**

> **1.    Class counsel will have reasonably amassed a lodestar of more than $68,000 by the conclusion of this matter.**

Applied here, "[t]he lodestar method is the gold standard for calculating fee awards under

a broad array of federal fee-shifting statutes"—including under the CLA. *Spooner*, 644 F.3d at

67 n.3. "This approach requires the district court to ascertain the number of hours productively

expended and multiply that time by reasonable hourly rates." *Id.* at 68.

The accompanying declaration from counsel confirms the significant efforts undertaken

by Greenwald Davidson Radbil PLLC ("GDR") to reach a resolution here. That included GDR:

(a) conducting an investigation into the underlying facts regarding Plaintiff's and the class's claims; (b) preparing the class action complaint, and researching Defendant's defenses thereto; (c) conferring with Defendant's counsel to prepare the parties' joint statement and proposed pretrial schedule; (d) attending the scheduling conference before this Court; (e) preparing and serving Plaintiff's first sets of interrogatories, requests for production of documents, and requests for admission directed to Defendant; (f) analyzing Defendant's net worth for purposes of class damages; (g) negotiating and preparing the parties' class action settlement agreement, including the proposed direct mail and website class notices; (h) researching and preparing Plaintiff's motion for preliminary approval of the class settlement, proposed preliminary approval order, and associated supplemental authority; (i) coordinating with the settlement administrator for dissemination of class notice; (j) researching and preparing the instant motion for approval of an incentive award and an award of attorneys' fees and expenses, and associated proposed order; (k) preparing counsel's declaration in support of Plaintiff's fee and expense request; and (l) repeatedly conferring with Plaintiff and Defendant's counsel throughout the litigation. *See* Johnson Decl. at ¶ 37.

Nor has GDR's work concluded. Its attorneys still must (1) research and prepare a reply brief in further support of the instant fee and expense petition; (2) answer any questions from class members regarding the settlement and claims process; (3) research and prepare Plaintiff's motion for final approval of the class settlement, and the corresponding proposed final approval order and judgment; (4) prepare for, travel to, and attend the final fairness hearing in Boston in December; (5) coordinate with First Class and Defendant's counsel to administer the settlement fund; and (6) continue to confer with class members as necessary regarding the claims process, settlement checks, or other related concerns. *See id.* at ¶ 38.

GDR has billed a total of 135.1 hours litigating this case to date[8] and, given the work remaining to be done to obtain final approval and distribute payments to class members, anticipates incurring an additional 35 to 45 hours to see this case through. *See id*. at ¶¶ 41-45. Therefore, by the end of this case, class counsel expect to have spent at least 170.1 hours prosecuting Plaintiff's and the class's claims—a total that they submit is eminently reasonable in this certified class action for the benefit of hundreds of consumers.[9]

Turning to counsel's hourly rates, two of GDR's attorneys made substantial contributions here: Jesse S. Johnson (11 years of experience) and James L. Davidson (16 years of experience). Mr. Johnson led the firm's efforts at the rate of $400 per hour, while Mr. Davidson, a senior partner, billed at $450 per hour.

Over the past 18 months, four district courts nationwide—the Southern and Middle Districts of Florida, the Southern District of West Virginia, and the Central District of California—specifically have approved GDR's rates in class actions under federal fee-shifting statutes, like this one. *Newman v. Edoardo Meloni, P.A.*, No. 20-60027, 2020 WL 5269442, at *2 (S.D. Fla. Sept. 4, 2020) (approving $400 and $450 as "within the range of reasonableness for this District"); *Riddle v. Atkins & Ogle Law Offices, LC*, No. 19-249, 2020 WL 3496470, at *2 (S.D. W. Va. June 29, 2020) ("Lead attorney Jesse S. Johnson has more than ten years of class action litigation experience and billed at $400 per hour. Senior partner James L. Davidson has

---

[8]     This tally does not include several additional hours spent on this case, which, in an exercise of billing discretion, GDR designated as non-billable. *See* Johnson Decl. at ¶ 41 n.1.

[9]     Plaintiff is filing this motion, prior to the objection deadline, seeking a total fee award that includes estimations for work remaining to be done so that class members may evaluate her fee petition in its entirety when assessing their potential courses of action here. In advance of the December 10 final fairness hearing, Plaintiff will provide the Court supplemental documentation confirming the time GDR spent on the tasks completed after the filing of this motion.

sixteen years of experience and billed at $450 per hour. The defendant does not dispute these rates or the attorneys' experience and skill, and the rates are within the range of reasonableness for this district."); *Aikens v. Malcolm Cisneros*, No. 17-2462, ECF No. 76 at 16 (C.D. Cal. Jan. 2, 2020); *Dickens v. G.C. Servs. Ltd. P'ship*, No. 16-803, 2019 WL 1771524, at *1 (M.D. Fla. Apr. 10, 2019) ("As for the billing rates, Class Counsel charged associate and partner rates ranging from $350 to $450 per hour. The Court agrees that for this type of litigation and the market rate in Tampa, the rates are reasonable.").

The District of Maine also approved GDR's $400 partner rate nearly four years ago, in comparable class action litigation under the FDCPA. *Marcoux*, 2017 WL 679150, at *5 ("The Plaintiffs' attorneys seek[] a rate of $350 per hour for the work of Jessie [*sic*] Johnson and a rate of $400 per hour for Michael Greenwald, James Davidson, and Aaron Radbil. In substantiating the reasonableness of their hourly rates, the attorneys have submitted affidavits detailing their experience in consumer protection litigation.").[10]

And in years past, other district courts outside this circuit have made similar findings concerning the reasonableness of GDR's partner rates in consumer protection class litigation. *See McWilliams v. Advanced Recovery Sys., Inc.*, No. 15-70, 2017 WL 2625118, at *3 (S.D. Miss. June 16, 2017); *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 689 (N.D. Cal. 2016) ("Given that Class Counsel has been appointed in numerous class actions, including FDCPA cases; courts have awarded them exactly the same rates requested here in previous cases; and courts in this District found similar rates appropriate in FDCPA cases, Class Counsel's requested rates are reasonable."); *Bellum v. Law Offices of Frederic I. Weinberg &*

---

[10]    The undersigned billed at $350 per hour as an associate in 2016 and 2017, leading up to the *Marcoux* fee request.

*Assocs., P.C.*, No. 15-2460, 2016 WL 4766079, at *10 (E.D. Pa. Sept. 13, 2016); *Gonzalez v. Dynamic Recovery Solutions, LLC*, Nos. 14-24502, 14-20933, 2015 WL 738329, at *4 (S.D. Fla. Feb. 23, 2015) ("Defendant shall pay Class Counsel $65,000.00 for attorneys' fees and expenses, which is based in part upon Class Counsel's reasonable hourly rate of $400 per hour.").

What's more, GDR's $400 and $450 partner rates are within the range of reasonableness for class action litigation in this district. *See, e.g.*, *Meagher v. Andover Sch. Comm.*, No. 13-11307, 2016 WL 70447, at *6 (D. Mass. Jan. 6, 2016) (Dein, M.J.) (approving $450 rate as reasonable in *individual* § 1988 litigation); *Davis v. Footbridge Eng'g Servs., LLC*, No. 09-11133, 2011 WL 3678928, at *3-4 (D. Mass. Aug. 22, 2011) (Gertner, J.) (in wage class action, approving senior associate rate of $425 and partner rates of $565 and $650); *Stokes v. Saga Int'l Holidays, Ltd.*, 376 F. Supp. 2d 86, 93 (D. Mass. 2005) (Collings, M.J.) (more than 15 years ago, approving hourly rates of $395 and $445 in wage class action settlement).

Applying each attorney's hourly rate to his accumulated time results in a total expected lodestar here of at least $68,695. *See* Johnson Decl. at ¶ 47. And further supporting the reasonableness of Plaintiff's request for only $57,000 in fees is the fact that this Court routinely applies *multipliers* to class counsel's lodestar when determining fee awards in class cases. *See, e.g.*, *Bettencourt v. Jeanne D'Arc Credit Union*, No. 17-12548, 2020 WL 3316223, at *3 (D. Mass. June 17, 2020) (Gorton, J.) ("the requested amount includes only a modest multiplier of the lodestar (1.20x) which is well within the range of multipliers typically allowed by this Court (1x to 2.7x)"); *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, No. 08-11064, 2012 WL 6184269, at *1 (D. Mass. Dec. 10, 2012) (Gorton, J.) ("The award of legal fees of 24% of the Settlement applies a multiplier of 1.3 to the lodestar. This multiplier is reasonable and in the

range of multipliers found reasonable for 'cross-check' purposes in common fund cases in this Circuit.").

But here, GDR does not seek any multiplier on its time investment in this case, but rather a discount of at least 17% as compared to its total anticipated lodestar. *See* Johnson Decl. at ¶ 47.

### 2. Aside from the time expended by GDR, several additional considerations further support the reasonableness of Plaintiff's fee request.

Judge Young once recognized that "[d]etermining whether a requested fee is reasonable requires consideration of a variety of factors," including:

> (1) the reaction of the class members to the settlement and proposed attorneys' fees; (2) the skill and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risk that the litigation will be unsuccessful; (5) the amount of time devoted to the case by counsel, and (6) the extent of the benefit obtained.

*In re TJX Cos. Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395, 401 (D. Mass. 2008). Plaintiff submits that each of the foregoing considerations bolsters the reasonableness of her request.

### a. Plaintiff obtained outstanding benefits for the class.

Addressing these factors in reverse order, the "benefit obtained" here no doubt is significant. The $18,000 cash relief for class members matches the statutory damages cap set by law, *see* 15 U.S.C. § 1640(a)(2)(B), meaning the class has achieved a full statutory damages recovery despite the relatively early stage of these proceedings—and despite the risk that, even assuming liability, the CLA's damages provision is permissive rather than mandatory and thus provided no assurance of any damages recovery at all. Courts therefore have approved class settlements representing comparatively lower recoveries for class members than the amount recovered here. *See, e.g.*, *McLaughlin v. Wells Fargo Bank, N.A.*, No. 15-2904, 2017 WL 994969, at *2 (N.D. Cal. Mar. 15, 2017) (approving TILA class settlement for 88% of statutory damages cap).

And the expected per-claimant recoveries—between $103 and $206—are noteworthy in that they exceed comparable class settlement figures in other recent cases under the CLA and other similarly capped consumer protection statutes. *See, e.g.*, *Claxton v. Alliance CAS, LLC,* No. 19-61002, 2020 WL 2759826 (S.D. Fla. May 27, 2020) ($15.76 per person in FDCPA class settlement); *Sullivan v. Marinosci Law Grp., P.C., P.A.*, No. 18-81368, 2019 WL 6709575 (S.D. Fla. Nov. 22, 2019) ($27.51 per class member in FDCPA class settlement); *Taylor v. TimePayment Corp.*, No. 18-378, 2020 WL 906319 (E.D. Va. Feb. 24, 2020) (CLA and TILA class settlement providing about $26 per nationwide claimant); *Spencer v. #1 A LifeSafer of Ariz., LLC*, No. 18-2225, 2019 WL 1034451 (D. Ariz. Mar. 4, 2019) (CLA class settlement providing between $22 and $45 per claimant); *Marcoux*, 2017 WL 679150 ($42 per class member in FDCPA class settlement).

What's more, in addition to financial relief, Plaintiff also obtained meaningful changes to Defendant's leasing practices on a going-forward basis, as Defendant no longer uses its form motor vehicle lease agreement that Plaintiff challenged. This change will aid any and all consumers who lease a vehicle with Defendant in the future. The benefits Plaintiff obtained—for herself, the class, and Defendant's future customers—thus strongly support her fee request.

>**b.** **The complexity and risks attendant to class action litigation, as well as GDR's risks of non-payment under Plaintiff's contingency fee arrangement, support the fee request.**

Next, this complex litigation bore significant risk absent settlement—as to the propriety of certification of a (contested) litigation class, as to the merits of class members' claims, and as to a potential damages award for the class. In other words, none of the foregoing was guaranteed, and Defendant's success on any single issue could have foreclosed any class recovery at all. *See* ECF No. 27 at 12-14 (describing risks). Plus, class certification and summary judgment motion

practice assuredly would have taken months, if not years, to resolve, with no promise of success. Instead, the parties' settlement here guarantees class members full statutory relief, immediately.

And GDR undertook its representation of Plaintiff (and the class) under a contingent attorneys' fee arrangement. As a result, class counsel have not received any payment for their work to date, and they prosecuted the class's claims for the past 14 months knowing they would only receive payment for their efforts if they ultimately obtained a recovery for Plaintiff and the class. That the attorneys' fee arrangement here is contingent "weighs in favor of the requested attorneys' fees award, because [s]uch a large investment of money [and time] place[s] incredible burdens upon . . . law practices and should be appropriately considered." *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1256 (D.N.M. 2012); *see also Ressler v. Jacobson*, 149 F.R.D. 651, 654-55 (M.D. Fla. 1992) ("Here, of course, the fee was entirely contingent, which meant that, had Petitioners recovered nothing for the Class, they would not have been entitled to any fee at all. The substantial risks of this litigation abundantly justify the fee requested herein.").

> ### c.   GDR relied upon its extensive experience in this field to efficiently develop and resolve class members' claims.

GDR's attorneys have earned a solid reputation through their extensive experience litigating class actions, particularly consumer protection class actions, having been appointed class counsel in a host of cases throughout the country. *See* Johnson Decl. at ¶¶ 15-20. Multiple district courts have praised class counsel's useful knowledge and experience in this regard. In *Schwyhart v. AmSher Collection Servs., Inc.*, Judge John E. Ott, Chief Magistrate Judge of the Northern District of Alabama, observed in granting final approval to a class action settlement led by GDR:

> I cannot reiterate enough how impressed I am with both your handling of the case,
> both in the Court's presence as well as on the phone conferences, as well as in the

> written materials submitted. . . . I am very satisfied and I am very pleased with what I have seen in this case. As a judge, I don't get to say that every time, so that is quite a compliment to you all, and thank you for that.

No. 15-1175 (N.D. Ala. Mar. 15, 2017).

And more recently, in *Riddle*, Judge Robert C. Chambers of the Southern District of West

Virginia recognized in approving GDR's attorneys' fees in an FDCPA class settlement:

> GDR is an experienced firm that has successfully litigated many complex consumer class actions. Because of its experience, GDR has been appointed class counsel in many class actions throughout the country, including several in the Fourth Circuit. GDR employed that experience here in negotiating a favorable result that avoids protracted litigation, trial, and appeals.

2020 WL 3496470, at *3.

Here, GDR drew upon this deep experience to efficiently negotiate a class resolution that

matches the best possible outcome at trial (explained above), while avoiding the delay of

additional protracted litigation, trial, and appeals. Counsel's effectiveness wholly supports the

requested fee award.

> ### d. The class notice specifically described a maximum fee award of $57,000, to which no class member has objected.

Finally, another important consideration is the support of the class after direct mail notice

disclosing that GDR would seek a fee and expense award of no more than $60,000 in total. The

deadline for objecting is October 13, 2020, and to date, not a single person has raised any

concerns over the proposed award. Such a positive reaction from the class lends further support

to the reasonableness of Plaintiff's fee request. *See Blandina v. Midland Funding, LLC*, No. 13-

11792, 2016 WL 3101270, at *8 (E.D. Pa. June 1, 2016) ("[T]his Court has also considered the

fact that Class Counsel took this matter on a contingency basis, there were no objections to the

amounts requested by any potential or actual Class Members, and that through the settlement,

Class Counsel has obtained for the Class members an amount approximating the maximum

statutory damage award permitted."); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1204 (S.D. Fla. 2006) ("The lack of significant objection from the Class supports the reasonableness of the fee request.").

### III.   Plaintiff's counsel is entitled to reimbursement of at least $664.23 in costs and litigation expenses.

Lastly, Plaintiff separately requests the reimbursement of costs and litigation expenses incurred by GDR of the type routinely charged to paying clients in the marketplace and, therefore, properly reimbursable under Rule 23. *See, e.g.*, *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (awarding as reasonable and necessary, reimbursement for "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees"); *see also* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and *nontaxable* costs that are authorized by law or by the parties' agreement.").

GDR thus far has incurred reimbursable costs and litigation expenses in the amount of $664.23. Johnson Decl. at ¶ 51. These expenses include the filing fee for the complaint ($400), service of process of the complaint and summons ($50), fees for counsel's admissions *pro hac vice* ($200), and postage charges for delivery of courtesy copies of case documents ($14.23). *Id.*

Additionally, counsel's travel to Boston for the final fairness hearing will require additional expenditures for airfare, lodging, airport parking in Ft. Lauderdale, local transportation to and from the airport and the courthouse, and related meals during travel. Counsel also anticipates additional postage charges in connection with courtesy copies of future briefing. GDR estimates that these additional costs and expenses will total approximately $600, resulting in total case costs and expenses of approximately $1,264.23 in total; however, in

advance of the final fairness hearing, counsel will provide more specific reimbursement figures after such costs and expenses are incurred. *Id*. at ¶¶ 52-53.

### Conclusion

Defendant has agreed to pay a $2,000 incentive award to Plaintiff, plus a reasonable attorneys' fee award of up to $37,000. For her part, Plaintiff agreed not to seek more than $57,000, though Defendant reserved its right to contest any specific figure within this $37,000-to-$57,000 range. Defendant also agreed to reimburse Plaintiff's and her counsel's reasonable costs and litigation expenses incurred here. These agreements are the result of separate negotiations that took place *after* the parties had agreed on all other class settlement terms.

Both the incentive award and proposed fee and expense awards were disclosed in the direct mail class notice. Significantly, no class members have objected to the settlement, including to the incentive and fee awards. Neither award will diminish class members' recoveries, as they will be paid in addition to, and not *from*, the $18,000 class settlement fund. So, should this Court reject either one, the class will not receive any additional benefits; the money will simply remain with Defendant. *See Good v. Nationwide Credit, Inc.*, No. 14-4295, 2016 WL 929368, at *16 (E.D. Pa. Mar. 14, 2016) ("Even if the Court were to approve less than the $125,000 negotiated amount, the class would not gain a greater recovery; rather, Defendant would simply keep the money.").

No matter, because the awards are fair and reasonable, unopposed by class members, and well supported by both the record and applicable law, this Court should approve them pursuant to the CLA and Rule 23.

DATED:  September 28, 2020          Respectfully submitted,


                                   */s/ Jesse S. Johnson*
                                   James L. Davidson (*pro hac vice*)
                                   Jesse S. Johnson (*pro hac vice*)
                                   Greenwald Davidson Radbil PLLC
                                   7601 N. Federal Hwy., Suite A-230
                                   Boca Raton, FL 33487
                                   Tel: (561) 826-5477
                                   jdavidson@gdrlawfirm.com
                                   jjohnson@gdrlawfirm.com

                                   *Class counsel*

                                   Kevin V. K. Crick
                                   Rights Protection Law Group, PLLC
                                   100 Cambridge St., Suite 1400
                                   Boston, MA 02114
                                   Tel: (844) 574-4487
                                   Fax: (888) 622-3715
                                   k.crick@rightsprotect.com

                                   *Liaison counsel*

## Certificate of Conference

Prior to filing the foregoing, pursuant to Local Rule 7.1(a)(2), I conferred with Defendant's counsel regarding the relief requested. Defendant does not oppose Plaintiff's $2,000 incentive award and does not oppose an award of attorneys' fees up to $37,000. However, Defendant has reserved its right to contest any award of attorneys' fees over $37,000.

                                   */s/ Jesse S. Johnson*
                                   Jesse S. Johnson

## Certificate of Service

I hereby certify that on September 28, 2020, I filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will provide notice to all counsel of record.

                                   */s/ Jesse S. Johnson*
                                   Jesse S. Johnson