UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KAYLA HERNANDEZ, on behalf of herself and others similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>STATE ROAD AUTO SALES, INC.,<br><br>                Defendant. | Civil Action No. 1:19-cv-11525-NMG<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW** |

## Introduction

The class settlement presented here for final approval under Rule 23(e) will provide participating class members over $190 each, for a total sum to the class of $18,000—the threshold limit of statutory damages allowed under the Consumer Leasing Act, 15 U.S.C. § 1667 ("CLA"), based on State Road Auto Sales, Inc.'s ("Defendant") net worth. What's more, Defendant has changed its leasing practices in response to this litigation, resulting in public benefits for Massachusetts consumers for years to come. And Kayla Hernandez ("Plaintiff") obtained this significant financial and prospective relief without the risk of years more of litigation to complete discovery, dispositive motion practice, and potentially trial and appeals thereafter.

Needless to say, Plaintiff is extremely proud of these excellent results for those like her who signed similar motor vehicle lease agreements with Defendant. For her part, Defendant has agreed to pay Plaintiff $2,000 separately from the class settlement fund, in recognition of her service to the class. Defendant also agreed to separately pay all notice and administration costs, plus a separate award of attorneys' fees, costs, and litigation expenses to class counsel of

$53,000 in total, as allowed under the CLA. The incentive and attorneys' fee awards still are subject to this Court's approval but will not diminish class members' recoveries in any way.[1]

With the help of First Class, Inc.—the court-approved class administrator—the parties distributed class notice by direct mail to all affected lessees, using their names and addresses from Defendant's records. The class's response has been universally positive: 94 class members submitted claims, none objected to the settlement, and no one requested to be excluded. Nor have any objections resulted from notice issued pursuant to the Class Action Fairness Act ("CAFA"). This support underscores the success achieved here, particularly given the limitation on class damages imposed by the CLA.

Plaintiff and her counsel strongly believe that the parties' settlement is fair, reasonable, and adequate, and in the best interests of all class members. As more fully set forth below, Plaintiff respectfully requests that this Court enter the accompanying order granting final approval to the settlement. Neither Defendant nor any class members opposes this relief.

### Summary of the Settlement

This Court previously certified a Rule 23(b)(3) settlement class composed of all persons who signed a Closed End Motor Vehicle Lease with Defendant, between August 1, 2017 and March 31, 2019, for a vehicle for personal, family, or household use. ECF No. 34. The parties distributed direct mail class notices on September 4, 2020, and deadline for return of class claims

---

[1] Plaintiff initially sought more than $57,000 in attorneys' fees and expenses, *see* ECF No. 38, but after continued negotiations—and with Defendant's consent—Plaintiff now seeks only $53,000 in total fees and expenses. ECF No. 40.

passed on October 13, 2020. ECF No. 34. There are approximately 868 potential class members,[2] of which 87 submitted timely and valid claims, and another seven submitted late claims. *See* Declaration of Bailey Hughes, attached as Exhibit A, at ¶¶ 16-17. The parties have agreed to accept all 94 claims, subject to this Court's approval.

Assuming no other late claims are received, each of the 94 participating class members will receive a pro-rata portion of the $18,000 settlement fund, or approximately $191.48. Not only is this an unusually high per-person recovery for CLA disclosure claims like the class's, but the aggregate settlement fund matches the statute's cap on class-wide statutory damages of one percent of Defendant's net worth. *See* 15 U.S.C. § 1640(a)(2)(B) ("in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same creditor shall not be more than the lesser of $1,000,000 or 1 per centum of the net worth of the creditor").[3] Should any settlement checks go uncashed after First Class takes all reasonable steps to forward checks to any forwarding addresses, the remaining settlement funds will be directed to Greater Boston Legal Services as the designated *cy pres* recipient. None of the funds will revert to Defendant.

Defendant also has committed to changing its form motor vehicle lease agreement to address Plaintiff's concerns raised in this litigation. This change in Defendant's business

---

[2]   The parties first estimated approximately 940 class members, but First Class's de-duplication efforts in connection with class notice mailing revealed only 868 unique individuals who fit within the class definition.

[3]   Internal footnotes, citations, and quotations are omitted, and emphasis is added, unless otherwise noted.

practices benefits not only Plaintiff and the absent class members, but also any other consumers in surrounding communities who lease vehicles from Defendant in the future.

Separate and apart from the class settlement fund, Defendant will pay (1) all costs of class notice and settlement administration; (2) an agreed incentive award of $2,000 to Plaintiff for her contributions to the class's recovery, subject to this Court's approval; and (3) an agreed award of $53,000 for class counsel's attorneys' fees, costs, and litigation expenses incurred in prosecuting Plaintiff's and the class's claims, also subject to this Court's approval.

Significantly, after being apprised of the foregoing class settlement terms, not one person lodged any objection to the settlement or even requested to be excluded from it. Ex. A at ¶¶ 14-15. Also important, no objections have resulted from Defendant's issuance of the required CAFA notice. In other words, there is unanimous support for the settlement at bar.

## Argument

**I. This Court should confirm its certification of the settlement class.**

This Court previously certified the settlement class in connection with preliminary approval. ECF No. 34 at 2-3. Plaintiff agrees with the Court's reasoning, and as nothing has changed in the interim, she sees no need to revisit certification. This Court accordingly should confirm its certification of the settlement class.

**II. This Court should finally approve the settlement as fair, reasonable, and adequate under Rule 23(e) and First Circuit law.**

District courts within this circuit assess the fairness and adequacy of a class settlement proposal using the following criteria: (1) the risk, complexity, expense, and duration of the case; (2) comparison of the proposed settlement with the likely result of continued litigation; (3) the reaction of the class to the settlement; (4) the stage of the litigation and the amount of discovery completed; and (5) the quality of counsel and conduct during litigation and settlement

negotiations. *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, No. 09-2067, 2014 WL 4446464, at *5 (D. Mass. Sept. 8, 2014) (Gorton, J.).

Additionally, Rule 23(e) commands consideration of several other factors, including whether the class representative and class counsel have adequately represented the class, and whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e). In applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored. *See Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009) ("although policy encourages settlements, the burden remains on the proponents to show that the settlement is reasonable," and "there is a presumption in favor of the settlement if discovery has been adequate and the parties have bargained at arms length").

Here, each relevant factor supports the conclusion that the parties' settlement is fundamentally fair, adequate, and reasonable, and in all class members' best interest.

**A.    The strengths of Plaintiff's case in comparison to the risk, expense, and delay of continued litigation against Defendant favor final approval.**

The first factor supports final approval because the settlement at hand guarantees significant class-wide relief without incurring the risk, additional expense, or inevitable delay associated with continued litigation. Every class action involves some level of uncertainty, both on the merits and on the appropriateness of certification. This case was no different, as there was no guarantee that a proposed litigation class (as opposed to a settlement class) would be certified over Defendant's likely objections. Even small variations in class members' lease agreements could have presented certification difficulties, potentially foreclosing any class-wide relief.

For that matter, there was no guarantee that this Court, or the trier of fact, would find in the class's favor as to liability on the claims at hand. While Plaintiff remains confident in those

5

claims—which she believes is reflected in the total settlement value—there was no guarantee of victory.

It also bears mention that, even with a victory in hand, the CLA's damages provision is not mandatory. Instead, it provides for awards, in the Court's discretion, up to certain amounts—specifically, the "lesser of $1,000,000 or 1 per centum of the net worth of the creditor." 15 U.S.C. § 1640(a)(2)(B). Several factors are considered in determining such an award, including Defendant's resources, the frequency and persistence of its compliance failures, and whether its noncompliance here was intentional. *See id.* at § 1640(a)(4). There was no guarantee a jury would award the class *full* statutory damages of one percent of Defendant's net worth. *Accord Marcoux v. Susan J. Szwed, P.A.*, No. 15-93, 2017 WL 679150, at *3 (D. Me. Feb. 21, 2017) ("[A]ssuming liability could be established, the guaranteed recovery provided by the settlement is reasonable considering that the FDCPA's damages provision is not mandatory. Had the Plaintiffs not settled the case and prevailed at trial, there was still no assurance they would recover full statutory damages of $1,000 for each of the named Plaintiffs, plus 1% of the Defendant's net worth for the class."). Nor was there any guarantee of a statutory *minimum* for class damages.[4]

But regardless, the parties' agreement here assures class benefits reaching that 1% threshold. Based upon Defendant's latest financials at the time of negotiations, the class's

---

[4] The risk of a minimal damages award was not merely hypothetical, as illustrated by restricted class damage awards under the Fair Debt Collection Practices Act ("FDCPA"), which similarly caps class statutory damages as under the CLA. *See, e.g.*, *Dickens v. GC Servs. Ltd. P'ship*, 220 F. Supp. 3d 1312, 1324 (M.D. Fla. 2016) ("Having considered these factors and the parties' briefs, the Court finds that the statutory award in this case should be nominal, whether that award applies to Dickens alone or a class of plaintiffs."), *vacated and remanded,* 706 F. App'x 529 (11th Cir. 2017); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, No. 06-1397, 2011 WL 1434679, at *11 (N.D. Ohio 2011) (analyzing the factors set forth in 15 U.S.C. § 1692k and awarding no "additional damages" to members of the class).

recovery of $18,000 matches the statutory damages cap imposed by the CLA. This, coupled with the avoidance of uncertainties attendant to continued litigation, weighs heavily in favor of approving the settlement's immediate relief. *See, e.g.*, *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) (noting in an FDCPA action also involving improper form disclosures, and for which a statutory damages cap applied, "[t]he FDCPA provides for an award up to certain amounts depending on a number of factors, including the nature of the debt collector's noncompliance. Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable.").

> **B. Comparing the benefits obtained to the likely results of litigation further supports the proposed settlement.**

For this same reason, the second factor likewise favors final approval. To reiterate, the cash relief provided to class members here matches the one-percent statutory damages cap set by law. *See* 15 U.S.C. § 1640(a)(2)(B). That is, by creating a class settlement fund of $18,000, Defendant is committing an amount to the class commensurate with one percent of its balance sheet net worth, indicating a full statutory damages recovery even at a relatively early stage of the case. *Accord Sanders v. Jackson*, 209 F.3d 998, 1004 (7th Cir. 2000) (holding that "net worth" in an FDCPA class action means "balance sheet or book value net worth" of assets minus liabilities); *see also Schuchardt*, 314 F.R.D. at 684 ("In sum, Defendant's net worth limits the scope of recovery here, and the Settlement Fund provides for recovery that exceeds this scope. Thus, even if the amount of per-Class Member recovery is less than the amount typically obtained in this District, because it exceeds the statutory maximum recovery, the amount offered in the Settlement Agreement favors final approval.").

7

Spurning settlement in favor of a potential trial verdict thus would provide class members no appreciable benefit—only added risk and delay of payment (assuming trial victory in the first place). "The assured compensation now is a fair trade-off for the uncertainties of trial and appeal and the accompanying delay in receiving any damages." *Marcoux*, 2017 WL 679150, at *4.

In any event, courts have approved class settlements representing comparatively lower recoveries for class members, cementing the fairness and reasonableness of the parties' negotiated resolution here. *See, e.g.*, *McLaughlin v. Wells Fargo Bank, N.A.*, No. 15-2904, 2017 WL 994969, at *2 (N.D. Cal. Mar. 15, 2017) (approving TILA class settlement for 88% of statutory damages cap); *Altamirano v. Shaw Indus., Inc.*, No. 13-939, 2016 WL 1271046, at *4 (N.D. Cal. Mar. 31, 2016) (finally approving class settlement for approximately 14% of total damages at issue, and noting, "Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the settlement is within the range of reasonableness in light of the risks and costs of litigation.").

To that end, the expected per-claimant recovery of $191 falls in the upper echelon of class settlements premised on faulty disclosures, like here. *See, e.g.*, *Taylor v. TimePayment Corp.*, No. 18-378, 2020 WL 906319, at *2 (E.D. Va. Feb. 24, 2020) (finally approving class settlement under the CLA, TILA, and Virginia usury law providing about $26 per nationwide claimant and about $240 per Virginia claimant); *Alderman v. GC Servs. Ltd. P'ship*, No. 16-14508, 2019 WL 1605656, at *2 (S.D. Fla. Apr. 9, 2019) ($10 per class member in FDCPA class settlement); *Spencer v. #1 A LifeSafer of Ariz., LLC*, No. 18-2225, 2019 WL 1034451 (D. Ariz. Mar. 4, 2019) (CLA settlement providing between $22 and $45 per claimant for class of more than 8,100 people); *Marcoux*, 2017 WL 679150, at *4 ($42 per class member in FDCPA settlement); *Salvagne v. Fairfield Ford, Inc.*, No. 09-324, 2011 WL 13248504, at *1-2 (S.D.

8

Ohio Sept. 21, 2011) (awarding maximum TILA class damages of $33,292.15, which allowed for $35.72 per class member).[5]

Also significant, Plaintiff obtained a commitment from Defendant to make adjustments to its form motor vehicle lease agreement to address the concerns raised in this litigation. In other words, Plaintiff has effected a change in the very leasing practices that prompted this lawsuit to begin with. And this benefit will accrue to all consumers who choose to lease a vehicle from Defendant in the future. *See Marcoux*, 2017 WL 679150, at *3 (that FDCPA class settlement "provides a prospective public benefit in that the Defendant agreed to change the form of its initial debt collection letter" at issue supported settlement approval).

In light of this prospective relief and the sizable financial benefits to class members, the settlement presented is fair, reasonable, and adequate, and should be approved by this Court. *See Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982) (Gonzalez, J.), *aff'd,* 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

**C.    The informal discovery shared by the parties confirms the reasonableness of the settlement.**

After several months of litigation—which included the exchange of initial disclosures as well as informal class and net worth discovery—the settlement here was achieved with a clear view as to the strengths and weaknesses of Plaintiff's class claims. Considering that the

---

[5]    *Accord Cobb v. Edward F. Bukaty, III, PLC*, No. 15-335, 2016 WL 4925165 (M.D. La. Sept. 14, 2016) ($52.28 each in FDCPA settlement); *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079 (E.D. Pa. Sept. 13, 2016) ($10.92 each in FDCPA settlement); *Lehmeyer v. Messerli & Kramer, P.A.*, No. 15-2419, ECF No. 61 (D. Minn. Aug. 10, 2016) (FDCPA class settlement providing $25 per person); *Schuchardt*, 314 F.R.D. at 684 ($15.10 per class member in FDCPA class settlement).

9

sufficiency of Defendant's disclosures under the CLA is likely a legal question, resolution of the claims is relatively straightforward. *Accord Gregory v. McCabe, Weisberg & Conway, P.C.*, No. 13-6962, 2014 WL 2615534, at *9 (D.N.J. June 12, 2014) ("because this action is premised primarily upon a form collection notification letter . . . legal issues predominate the remaining disputes in this litigation").

The more complicated questions concerned viability of class certification absent settlement and establishing a class damages award within the confines of the statute, as described above. To that end, Defendant shared relevant data concerning the potential class size as well as its own net worth. Plaintiff thus could assess the class's maximum potential statutory damages recovery at trial, and she is proud to have negotiated a settlement fund that reaches this amount.

### D. The settlement was the result of arm's-length negotiations among counsel experienced in consumer protection class litigation.

Next, the fifth factor additionally supports final approval. Based on the discovery obtained, counsel—who have substantial experience in litigating class actions, particularly under consumer protection statutes, *see* ECF No. 38-1 at ¶¶ 7-20—and this Court are adequately informed to evaluate the fairness of the settlement. Both Plaintiff and class counsel firmly believe that the settlement is fair, reasonable, and adequate, and in the best interests of the class members. *See Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.").

Further, the parties' arm's-length settlement negotiations through experienced counsel demonstrate the fairness of the settlement that was reached, and that it is not a product of

collusion. Counsel for both sides zealously negotiated on behalf of their clients over the course of several months, resulting in the exchange of multiple written counteroffers and myriad telephone conferences before reaching the agreement here presented. As a result, Plaintiff and her counsel submit that the value of the class's recovery—which reaches the applicable damages cap—reflects their confidence in the class's claims. *See Schuchardt*, 314 F.R.D. at 685 ("Given Class Counsel's extensive experience in this field, and their assertion that the settlement is fair, adequate, and reasonable, this factor supports final approval of the Settlement Agreement.").

In sum, "[b]oth the conduct of the negotiations and the quality of counsel support final approval of the class settlement." *Marcoux*, 2017 WL 679150, at *4.

### E. Universal support from the parties, their counsel, and the class members highlights the fairness and reasonableness of the settlement.

Also important to this Court's analysis is the favorable reaction from all involved. It bears repeating that Plaintiff, her counsel, as well as Defendant all agree that the negotiated resolution is a fair and reasonable compromise of the class's claims. It follows that a strong initial presumption of fairness should attach to the settlement because it was reached by well qualified counsel engaged in arm's-length negotiations, for which courts accord great weight in their fairness analyses. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement.").

What's more, "[t]he reaction of the class strongly favors approval of the settlement." *Marcoux*, 2017 WL 679150, at *3. After a robust direct mail notice program, not a single class member requested to be excluded or objected to any portion of the settlement. Ex. A at ¶¶ 14-15. "[T]he complete absence of objections or exclusions here supports approval." *Marcoux*, 2017

WL 679150, at *3; *accord Kingsborough v. Sprint Commc'ns Co., L.P.*, No. 14-12049, 2015 WL 1605506, at *3 (D. Mass. Apr. 8, 2015) (Gorton, J.) ("The absence of objection by class members to Settlement Class Counsel's fee-and-expense request further supports a finding that it is reasonable.").

Further, pursuant to CAFA, Defendant served written notice of the settlement on the necessary federal and state officials. *See* Ex. A at ¶ 5. Significantly, no objections resulted from CAFA notice, either. And more than 11% of potential class members submitted claims, which is well in line with consumer protection class actions of this kind. *See Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) ("Although Lopez points out that the low claims rate also means that only 3 percent of the class will receive this benefit, we note that a claim rate as low as 3 percent is hardly unusual in consumer class actions and does not suggest unfairness."); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (en banc) (noting evidence that claims rates in consumer class settlements "rarely" exceed 7%, "even with the most extensive notice campaigns").

### F. The settlement treats all class members equitably.

Lastly, Rule 23(e)(2)(D) requires this Court to confirm that the settlement treats all class members equitably. The related Advisory Committee's Note advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018).

Here, each class member has the same CLA claims resulting from Defendant offering them materially similar motor vehicle lease agreements with allegedly deficient disclosures. As a result, the settlement provides all class members pro-rata portions of a single settlement fund,

with class notice distribution, settlement administration, Plaintiff's proposed incentive award, and class counsel's attorneys' fees, costs, and expenses to be paid separately by Defendant.

Moreover, class members' releases are identical, as each person will release the same CLA claims based on their form motor vehicle lease agreements. *See Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-660, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) ("This proposal is fair and equitable because the class members' interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund."). And class members had the ability to exclude themselves from the settlement and pursue their claims individually. *See Charvat v. Valente*, No. 12-5746, 2019 WL 5576932, *6 (N.D. Ill. Oct. 28, 2019) ("Moreover, the ability to opt out of the settlement allows class members who received more than three calls to pursue the possibility of a greater award in an individual suit."). This consideration accordingly supports final approval.

### G. The class notice campaign satisfied due process and Rule 23.

Rule 23 requires "that class members be given information reasonably necessary to make a decision [whether] to remain a class member and be bound by the final judgment or opt out of the action, though the notice need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011). Here, First Class used all reasonable efforts to provide direct mail notice to each potential class member. *See* Ex. A at ¶¶ 6-13.

The Court-approved notice apprised class members of: (1) the nature of the action; (2) the essential terms of the settlement, including the class definition and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process for objecting or excluding one's self, including the time and method for objecting or requesting

exclusion and that class members may make an appearance through counsel; (5) information regarding class counsel's request for an award of attorneys' fees and expenses, and Plaintiff's request for an incentive award; and (6) how to submit a claim, make inquiries, and obtain additional information. ECF No. 34 at 4 (approving class notice). In short, this notice plan ensured that class members' due process rights were amply protected, and the settlement should be approved. *See* Fed. R. Civ. P. 23(c)(2)(B).

## Conclusion

Plaintiff here presents an outstanding class settlement that will provide participating class members over $190 each, plus Defendant's commitment to changed leasing practices that address the concerns raised in this litigation. Proceeding to trial would have offered little, if any, additional benefits to class members—only assured risk and guaranteed delays from additional motion practice, trial, and likely appeals, assuming any recovery at all.

Class members accordingly universally support the settlement, as evidenced by their lack of objections or requests for exclusion. Plaintiff accordingly requests that this Court enter the accompanying order granting final approval to the parties' class action settlement. Significantly, neither Defendant nor any class members oppose this relief.

DATED:  November 12, 2020               Respectfully submitted,


                                        */s/ Jesse S. Johnson*
                                        James L. Davidson (*pro hac vice*)
                                        Jesse S. Johnson (*pro hac vice*)
                                        Greenwald Davidson Radbil PLLC
                                        7601 N. Federal Hwy., Suite A-230
                                        Boca Raton, FL 33487
                                        Tel: (561) 826-5477
                                        jdavidson@gdrlawfirm.com
                                        jjohnson@gdrlawfirm.com

                                        *Class counsel*

                                        Kevin V. K. Crick
                                        Rights Protection Law Group, PLLC
                                        100 Cambridge St., Suite 1400
                                        Boston, MA 02114
                                        Tel: (844) 574-4487
                                        Fax: (888) 622-3715
                                        k.crick@rightsprotect.com

                                        *Liaison counsel*


## Certificate of Service

I hereby certify that on November 12, 2020, I filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will provide notice to all counsel of record.

                                        */s/ Jesse S. Johnson*
                                        Jesse S. Johnson

15